HELEN ECKERT, Respondent, *v.* LOUIS REICHARDT, Appellant.

First Department, December 18, 1925.

Landlord and tenant — liability of landlord for failure to make repairs — action by tenant for injuries suffered when plastering in tenement house fell on her while she was in bed — landlord had promised to repair — Tenement House Law, § 102, imposing duty on landlord to repair does not relieve tenant from effect of contributory negligence.

A tenant of a tenement house cannot recover damages for injuries suffered when plastering fell upon her while she was in bed, where the evidence establishes that she was guilty of contributory negligence in that while the landlord had promised to make repairs she still continued to sleep in a bed directly under that portion of the ceiling which, according to her testimony, was in a dangerous condition, for, while section 102 of the Tenement House Law imposes a statutory duty on the landlord to make repairs, it does not relieve the tenant of the effect of her own contributory negligence.

APPEAL by the defendant, Louis Reichardt, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 7th day of November, 1924, upon the verdict of a jury for $7,500.

*E. C. Sherwood* [*William L. OBrion* of counsel], for the appellant.

*Morris Lavitt* [*George F. Hickey* of counsel], for the respondent.

FINCH, J. The defendant is the owner of a tenement house. The plaintiff occupied, as tenant, an apartment in said house, and the ceiling of plaintiff's bedroom, directly over her bed, fell upon her while in bed, causing the injuries complained of. Complaint had previously been made to the defendant both by the plaintiff and her husband for ten months prior to the accident, that the ceiling was cracked and defective and in need of repair. Plaintiff's husband testified: " I told him it was continually getting worse and the first thing you know it would be falling down if it was neglected any longer." The testimony on behalf of the plaintiff further showed that the ceiling sagged in the center around the chandelier and that the condition was getting worse as time went on until the date of the accident. Repeated complaints to the defendant elicited merely promises to attend to the matter, which, however, were never fulfilled. The appellant claims upon these facts to have been entitled to a dismissal of the complaint in that the plaintiff was guilty of contributory negligence as a matter of law, upon the theory that a tenant may not remain upon premises that obviously are unsafe because of defects which the landlord is obligated to repair, and, upon being injured, hold the landlord

in negligence for such injuries.  At common law the landlord was under no duty to make repairs.  (*Altz* v. *Leiberson*, 233 N. Y. 16.) If, however, the landlord had agreed to make repairs, his only liability was such damages as could be shown to have resulted from the breach of the contract.  The tenant could not by remaining in the premises, which were unsafe because of needed repairs, hold the landlord in negligence in the event of suffering injury. As was said by Mr. Justice RUMSEY, in *Schick* v. *Fleischhauer* (26 App. Div. 210): " The tenant is not at liberty, if the landlord fails to keep his contract to repair the premises, to permit them to remain in an unsafe condition and to stay there at the risk of receiving injury on account of the defects in the premises and then recover as for negligence for any injuries that he may suffer."

Subsequent to the decision of the foregoing, as well as of the other cases relied upon by the appellant, there has been imposed upon the owners of tenement houses a statutory duty to keep the same in good repair.  By section 102 of the Tenement House Law (Laws of 1909, chap. 99), which is a re-enactment of section 103 of the Tenement House Act (Laws of 1901, chap. 334, as amd. by Laws of 1903, chap. 179), it is provided as follows: " Every tenement house and all the parts thereof shall be kept in good repair * * *." A failure on the part of the landlord to repair a defective ceiling, after notice, has been held to be a breach of duty under the aforesaid section, which is evidence of the landlord's liability for damages suffered by a tenant by reason of the falling of such ceiling.  (*Altz* v. *Leiberson, supra.*)  While the imposition upon the landlord of the aforesaid statutory duty to repair created a liability which did not theretofore exist, it does not follow that there has been any change in the law with respect to contributory negligence. The fact that there is a duty on the part of a landlord to repair cannot justify a tenant in remaining in a position of imminent danger or in neglecting to take ordinary measures of precaution to avoid injury that is immediately impending.  The plaintiff still has the burden of showing freedom from contributory negligence. While it cannot be said that the plaintiff was guilty of contributory negligence as a matter of law in remaining in the bedroom which she occupied, on the other hand, if the plaintiff knew that said ceiling was in immediate danger of falling, it was incumbent upon her to show that she was not negligent in being beneath the ceiling when it did fall.  As was said by LAUGHLIN, J., in *Frank* v. *Simon* (109 App. Div. 38, 42): " We are also of opinion that it cannot be said, as matter of law, that the plaintiff was guilty of contributory negligence in remaining in the apartment or failing

10

to have the plaster removed or repaired. Even though some of the plaster at times, when the water was leaking through it, may have appeared to be hanging or sagging, this did not necessarily indicate that it would fall if the cause were removed by making the necessary repairs to the roof to prevent its leaking in the future which the landlord appears always to have promised to do. In determining whether the plaintiff was guilty of contributory negligence in continuing to occupy the apartment of the defendant, her conduct must be weighed in the light of the surrounding circumstances, including the fact that she had paid for the use of the apartment and might be unable to obtain or pay for the use of another. The jury might well find on this evidence that it was not an improvident act for the plaintiff to remain in the apartment."

It was error, therefore, for the court to refuse the request of defendant's counsel to charge the jury that " if the plaintiff believed that the ceiling in this bedroom was dangerous or liable to fall, she was not at liberty to remain there and then attempt to hold the landlord for damage." The learned trial court did charge the jury, after denying the foregoing request: " If the jury finds that the plaintiff in any respect, in the slightest respect, contributed to cause the accident and her own condition, you must find for the defendant. You can't speculate. But I decline to apply it to the extent that the defendant requests." Upon the record before us the charge as made was not adequate. One of the main questions in the case was whether this plaintiff was guilty of contributory negligence in sleeping directly beneath this ceiling, the defects in which both she and her husband had described so graphically to the landlord. Under these circumstances the court, when requested by the defendant, should have met the issue squarely and charged more specifically with reference to the case which was then being tried, so that the defendant could have been satisfied that the jury had before them the correct principle of law to be applied to the facts as the jury should find them. The plaintiff has not attempted in this record either to show that she took any measures to avoid needlessly exposing herself to danger or to show any facts which would excuse her from taking such measures. The defendant was entitled to a charge that if the jury should find that this plaintiff believed that the ceiling in this bedroom was dangerous or liable to fall, she was not at liberty, without showing any facts from which such a course could be excused, to continue to sleep directly beneath this portion of the ceiling and then attempt to hold the landlord for damages. The plaintiff could show any facts which would seek to excuse or justify her remaining, but, as already pointed out, the plaintiff did not attempt so to do. If she

had, the whole matter would then have been left to the jury to determine whether the plaintiff, as an ordinarily prudent and careful person, under all the circumstances as detailed by her, exercised due care in still sleeping beneath the ceiling in question. The defendant, therefore, was entitled to a more specific charge as indicated, and its denial requires the granting of a new trial.

It follows that the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.