# CHARLESTON.

CHARLES JANKEY v. HOPE NATURAL GAS CO.

(No. 5189.)

Submitted March 3, 1925.        Decided March 10, 1925.

1. RULE OF RES IPSA LOQUITUR AS DEFINED IN PREVIOUS CASES FOLLOWED AND APPLIED.

The rule of *res ipsa loquitur* as defined in *Snyder v. Wheeling Electric Company*, 43 W. Va. 661, *Bice v. Wheeling Elec-*

98 W. Va.

*trical Company,* 62 W. Va. 582, and in *Jones* v. *Bridge Company,*
70 W. Va. 374, followed and applied.   (p. 415.)

(Negligence, 29 Cyc. p. 592.)

2.   APPEAL AND ERROR—*Judgment on Former Appeal That Facts
and Circumstances Presented Case of Prima Facie Negli-
gence is Res Judicata at Second Trial Upon Proof of Same
Facts and Circumstances.*

The holding of this court in its opinion in 91 W. Va. 308,
that the facts and circumstances surrounding the explosion
which injured the plaintiff as proven on the first trial hereof,
presented a case of *prima facie* negligence by defendant, is
*res judicata* at a second trial thereof, upon proof of the same
facts and circumstances.   (p. 417).

(Appeal and Error, 4 C. J. § 3075.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part
of syllabi.)

Error to Circuit Court, Marion County.

Action by Charles Jankey against the Hope Natural Gas
Company. Judgment for plaintiff, and defendant brings
error.

*Affirmed.*

*Arthur E. Young* and *Edward M. Borger,* and *Kemble
White* and *Charles Powell,* for plaintiff in error.

*Harry Shaw* and *Frank C. Haymond,* for defendant in
error.

HATCHER, JUDGE:

A trial of this case before the circuit court of Marion
county resulted in a verdict of the jury in favor of the plain-
tiff for $5,000.00.   The court rendered judgment for the
plaintiff and against the defendant, in this amount, and the
defendant alleges error.

This is the second time this case has been here on a writ of
error.   Our opinion on the first trial is reported in 91 W. Va.
308.   The facts and circumstances surrounding the injury
to plaintiff as proven at the first trial were again
proven at the second trial.   It is therefore unnecessary to
make a re-statement herein of the case.   Some new evidence
was produced on the second trial, which is as follows:   The

day following the accident, engine number 2 was repaired. One of the repair men, named Toothman, testified that while repairing this engine, he found a broken piece of valve under, and holding open one of its air check valves. Toothman was a witness at the first trial, but made no mention of the discovery then. There is no evidence directly accounting for this piece of valve, although the explosion burst several valves on a two inch air line which lead to this, as well as the other engines. It was not a part of the valve in which it was lodged.

Proceeding on the assumption that this piece of metal had somehow gotten into and was holding open the valve of engine number 2 just prior to, and at the time of the explosion, quite an array of witnesses accounted for the explosion on the theory that the valve on engine number 2, so held open, permitted the fuel mixture in the engine to be forced back into the air line on each compression stroke, while the engine was being operated by compressed air; and that when the electric current was switched on, the ignition thereby started, extended from the combustion chamber of the engine out through the open valve into the air line, so filled with gas, with the resulting explosion which injured the plaintiff.

Five errors are alleged as grounds for a reversal of the case, which will be considered as numbered by the defendant.

1.   The defendant asked the court to give to the jury eight instructions, of which the court gave instructions numbered 3, 6, 7 and 8, but refused instructions numbered 1, 2, 4 and 5. The defendant complains of the rejection by the court of the last numbered instructions.

Defendant's instructions 1 and 2 are peremptory instructions. A peremptory instruction was also asked by the defendant at the former trial in this case, in regard to which the court in its opinion, said:

"Number 1 was peremptory, directing the jury to find for the defendant, and under the circumstances shown, we think was properly refused."

We therefore have an express ruling by this court that the circumstances surrounding this injury, as proven at the

first trial, warranted a submission of the case to the jury. The same circumstances which upon the former hearing, this court held were properly submitted to a jury appeared in evidence at the second trial of this case. In addition to the circumstances surrounding the injury, two theories were offered as to the cause of the explosion at the first trial. The same two theories were in evidence on the second trial. At the last trial, however, another and different theory of the cause of the explosion was also presented, as aforesaid, which is referred to in the briefs in this case as the *third theory*. This theory was based on a fact, not proven but merely assumed. It was a theory of experts just as were the other two theories. It differed therefrom in detail, but not in general character. For the purposes of this discussion, we see no distinction in law between it and the other two theories. The only fact from which was evolved this third theory was a fact determined after, and not before the explosion, to-wit: the discovery by Toothman of the piece of valve in the valve of engine number 2. This fragment may as well have been the *result* as the *cause* of the explosion. In fact, one can hardly believe that an explosion so powerful as to burst asunder valves would have left anything in its pathway undisturbed. It is far more reasonable to believe that this valve fragment was a piece of one of the bursted valves along the air line, and that it had been hurled to the place where found, than to believe it remained in the same place while the terific force which it had unleashed spent its fury in the rending of steel and the shattering of concrete. If it was proper to submit the case to the jury at the first trial, the mere injection of this third theory into the evidence at the second trial can in no wise affect the application of our first holding thereto.

The former decision in this case does not contain a discussion of the reasons prompting the holding that the peremptory instruction therein was improper. The ruling is justified in the opinon by reference only to the *circumstances shown, i. e., res ipsa loquitur*. The court assumed its reasons were obvious. The decision is just as binding on us as if the reasons for the holding had been given.

"The decree of the Supreme Court of Appeals upon a question, decided by the court below, is final and irreversible; and upon a second appeal in the cause, the question, decided upon the first appeal, cannot be reviewed." *Henry et al* v. *Davis*, 13 W. Va. 230. See also 4 C. J. par. 3085, p. 1093.

Here was a plant solely under the management of the defendant. It had been operated a number of years. One of the witnesses testified to having worked at this plant more than six years prior to the explosion. This explosion was one which did not, in the ordinary course of things, happen, proper care being used in the management of the plant. There is no evidence whatsoever in the case showing any care on the part of the defendant to employ reasonably safe fellow servants, or showing any inspection of, or rules for the purpose of keeping the plant in a reasonably safe condition, except the sole evidence that it was the custom to thoroughly overhaul its engines once a year, to-wit: during the summer months of each year. There is no evidence that the overhauling of such engines annually was sufficiently frequent to comply with the rule of reasonable care. The jury had no right to infer, and we have no right to infer, that an annual inspection, adjustment and repair of these engines was reasonable care. Neither do we have the right to infer that reasonably safe fellow servants were furnished the plaintiff, without some evidence on which to base the inference.

The defendant contends that the mere fact of the explosion is not evidence upon which the jury could base its verdict, citing:

*Veith* v. *Hope Salt Co.*, 51 W. Va., 96, 41 S. E. 187 (1902); *Marshall Window Glass Co.* v. *Cameron Oil & Gas Co.*, 59 S. E. 959, 63 W. Va. 202 (S. C. W. Va., 1907); *Findley* v. *Coal & Coke Ry. Co.*, 78 S. E. 396, 72 W. Va., 268, 1913; *Hanley* v. *Railway Co.*, 59 W. Va., 419, 1906; *Texas & Pacific Ry. Co.* v. *Barrett*, 166 U. S., 617, 41 L. ed., 1136; *Union Pacific Ry. Co.* v. *Snyder*, 152 U. S. 683, 38 L. ed., 597; *Allegheny Heating Company* v. *Rohen*, 118 Pa. 223.

It may be conceded that the bare fact of an injury, standing alone and with no supporting evidence, is not sufficient to justify an inference of negligence. It is equally well settled, however, that direct proof of negligence is not necessary. Negligence may be established by proof of facts which warrant its inference. Circumstances surrounding an occurrence are frequently held, if unexplained, to indicate an antecedent or coincident existence of negligence as the efficient cause of that occurrence. In such instances, the doctrine of *res ipsa loquitur* is invoked. This rule was defined and applied in *Snyder* v. *Wheeling Electrical Company*, 43 W. Va. 661, in *Bice* v. *Wheeling Electrical Company*, 62 W. Va. 685, in *Jones* v. *Bridge Company*, 70 W. Va. 374, as well as in other cases decided by this court.

In upholding this rule, courts have not intended thereby to exempt a plaintiff from the burden of proving negligence, either affirmatively or by circumstances making it a legitimate inference. This burden remains with a plaintiff. It was so held in *Veith* v. *Hope Salt Co.*, and other cases cited by the defendant, *supra*. But this court has also held that when the physical facts of an accident themselves create a reasonable probability of negligence, such facts furnish evidence of negligence by force of the maxim, *res ipsa loquitur*. Injuries which do not ordinarily occur, when reasonable care is taken to avoid them, are of themselves evidential facts of negligence.

The plaintiff herein was at a place where he had a right to be. He had nothing whatsoever to do with the direction of the defendant's business. The plant was under the sole management and control of the defendant. It was engaged in handling a highly dangerous substance. However, there had never been an occurrence like the one which injured the plaintiff, prior thereto. The facts warrant the inferences that this plant had been properly installed in the first instance; and that after so many years of safe operation, this explosion would not have occurred had reasonable care continued up to the date of the injury. The facts and inferences therefrom establish a prima facie case of negligence in the management of the plant and call upon defendant to make answer of its steward-

ship prior to the explosion. The defendant's managing representatives could have testified of the care taken to safeguard the workmen. They were witnesses at the trial. The defendant was no insurer of the safety of its plant, but the law did exact of it reasonable care to prevent injury. If its care had been commensurate with the risks of the business, proof thereof would have been a Gibraltar of defense. Instead of founding its case on that rock, its defense was constructed on the unsubstantial sands of theory.

We approve the statement of Judge MILLER in *Bice* v. *Wheeling Electrical Company, supra*:

> "In a case of negligence where the rule of *res ipsa liquitur* is applicable * * * the rebuttable presumption of negligence retains its original force until overcome by proof of affirmative acts of due care of the defendant."

Because of the failure of the defendant to offer evidence of reasonable care in the management of its plant, it cannot now successfully complain of the rejection by the trial court of the peremptory instructions.

Defendant's instructions numbered 4 and 5 were sufficiently and more fully covered in its instruction number 8.

II. Plaintiff's instructions numbered 2, 3, 4 and 6 are the same which were considered by this court in the former case here and concerning which Judge MEREDITH held:

> "We have carefully examined the instructions given for the plaintiff and find no error. They involve no new principles, and a discussion of them is unnecessary."

III. Assignment of error number 3 goes to the opinion of witness A. R. Graham as to the cause of the explosion, etc. The evidence of Mr. Graham on this particular matter was given at the former trial, and its admission was urged as error by the defendant. The ruling of this court on this evidence is very clearly expressed in section 2 of the syllabus of our former decision.

IV.   Under our ruling relative to the evidence of Mr. Graham, we find no error in the admission of that of witness White.   Defendant contends that the evidence of White (as well as of Graham), was inadmissible because assuming the existence of facts not proven.   This argument, if warranted by the record, is not consistent with defendant's advocacy of the so-called third theory of the explosion, which also assumed the existence of an unproven fact.

Defendant contends that a verdict resting upon such evidence as that complained of against Graham and White cannot be upheld.   The plaintiff's case did not depend on his establishing a theory of the cause of the explosion.   His case would be no whit weakened by the entire rejection of the theories of witnesses White and Graham.   The verdict of the jury therefore does not depend in the least respect on the theories advanced by either one of these witnesses.

V.   The final assignment of error is the refusal of the court to set aside the verdict of the jury, and grant defendant a new trial.   This was not error.   There was sufficient evidence to warrant the verdict.

The judgment of the lower court is therefore affirmed.

*Affirmed.*