ALFRED HORAN AND ALICE HORAN, PLAINTIFFS-RE-
SPONDENTS, v. LOUIS HARRIS AND MICHAEL EISEN-
BERG, DEFENDANTS-APPELLANTS.

Submitted January 27, 1934—Decided May 21, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD
and HEHER.

For the appellants, *Collins & Corbin* (*Edward A. Markley*,
of counsel).

For the respondents, *Andrew O. Wittreich*.

PER CURIAM.

Alice Horan, one of the plaintiffs below, while an invitee
on premises owned by the defendant below, tripped over a
defective and loose brass nosing attached to a step on a stair-
case, which it was averred was a common passageway, within
the control of the defendants, and which they negligently
failed to repair after reasonable notice of such defect; and
such plaintiff, and her husband, also a plaintiff, recovered a
verdict and judgment on account of the injury received by
the wife.

The defendants (hereinafter called the landlord) appeal
and contend that the trial judge erred in refusing to nonsuit
and to direct a verdict for the defendants.

The landlord argues first that there was no evidence tending to show that he had notice of the dangerous defect on the stairs before the accident, and, hence, he should have prevailed on his motions on this ground.

We think it was competent for the jury under the evidence to find that the landlord had such notice.

There was evidence tending to show that the brass nosing was loose long before the time of the accident and that the landlord was told of the condition of the steps and the landlord said "he would not fix it."

Moreover, after the denial of the defense motion for nonsuit the plaintiff Alice Horan was called in rebuttal and testified that after the accident she talked with the landlord. Her testimony was:

"Q. Mrs. Horan, do you know Mr. Harris who was on the stand here? A. That gentleman there, yes, sir. Q. That gentleman? A. Yes, sir. * * * Q. And did you have a talk with him? A. The young lady was there and I asked the young lady."

Mr. Markley—"I object. Was this gentleman there?"

The witness—"That gentleman there. She said Mr. Harris and I think she said another name, too. I asked where he was, was he there, and she said no. So he walked in. She said, 'this is Mr. Harris now.' So I said, 'Mr. Harris, do you know the condition of that stairs? Is that your duty?' And he looked at me and said, 'yes. What of it?' 'Well,' I said, 'I fell down the stairs.' He said, 'what the hell do I care.' 'Well,' I said, 'you are responsible for the stairs,' and I walked out and he stood and laughed at me."

Of course the question of the truth of that testimony was for the jury. It bore on the question of notice to the landlord of the condition of the stairs. Because this testimony came in subsequent to the motion for nonsuit does not impair its probative value. A refusal to nonsuit for failure of proofs will not justify a reversal if the defect be supplied by evidence thereafter taken during the progress of the cause.

The landlord seems to argue in this connection that because a tenant, with the acquiesence of the landlord, undertook to

fix the nosing after the tenant had complained to the landlord of its defective condition and the latter had refused to repair it, that thereby the landlord is relieved of responsibility. But such is not the law. The rule is that "the landlord cannot shift the responsibility assumed by him to his tenants to make the common ways and equipment reasonably safe in so far as ordinary care can effect that result. *Hussey* v. *Long Dock Railroad Co.,* 100 *N. J. L.* 380; 126 *Atl. Rep.* 314.

The landlord also contends that there was no evidence tending to show that the plaintiff Mrs. Horan at the time of the injury was using a common passageway which was under the control of the landlord. We believe that there was. The evidence tended to show this to have been the situation: The building in question was a three-story building. The landlord occupied the first or ground floor as a store. He leased to Professor Fred Nicholson the second floor for a dancing studio which the professor conducted there. Professor Nicholson's holding was a yearly tenancy. At that time there was another tenant occupying typical living apartments on the third floor. Leading into the building from the street was a vestibule from which there was an entrance to the landlord's store on the first floor, there being also another entrance to the store from the street. Leading from the vestibule was a stairway running to the second and third floors. Later, and still before the accident, the landlord dispossessed the tenant on the third floor and distrained for rent, and Professor Nicholson and his wife, who had theretofore lived elsewhere, bought from the landlord the furniture previously owned by the third floor tenant, and moved in and lived in the third floor apartment, and Mrs. Nicholson's testimony is definite to the effect that the letting of the apartment on the third floor was to her and her husband. They held under a monthly tenancy. Still later the accident here in question occurred under the following circumstances: Mrs. Horan, the plaintiff, had visited the dancing studio of Professor Nicholson's on the second floor for the purpose of arranging for dancing lessons for her child, and it was while descending the stairs from the dancing studio to the ground floor that

she tripped over the defective nosing on the stairway and was injured.

We think it was competent for the jury to infer from this evidence and from the admissions of the landlord hereinabove referred to that the injury occurred on a common passageway under the control of the landlord and in his legal possession and one used by the tenants as appurtenances to the property demised to them.

The judgment will be affirmed, with costs.